# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | )  |
|---|---|
| CORPORATE AIR, LLC, | ) |
| | ) |
| Plaintiff, | ) 2:13-cv-729 |
| | ) |
| v. | ) |
| | ) |
| JONATHAN BROOKS DAVIS | ) |
| *and* JACQUELINE DAVIS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is the MOTION TO DISMISS (ECF No. 9) filed by Defendants Johnathon Brooks Davis and Jacqueline Davis with brief in support (ECF No. 10). Plaintiff Corporate Air, LLC filed a brief in opposition (ECF No. 11); Defendants filed a reply brief (ECF No. 12). Accordingly, the motion is ripe for disposition.

### I.     Background

The following background is drawn from the Complaint, and the factual allegations therein are accepted as true for the purpose of this Memorandum Opinion. As the law requires, all disputed facts and inferences are resolved in favor of Plaintiff, the non-moving party.

**A.  Factual Background**

Corporate Air provides aircraft management, charter sales and acquisition services for aircraft with a registered address at the Allegheny County Airport. Davis Air, Inc. ("Davis Air") is a North Carolina Corporation owned and operated, in part, by Gary Davis and/or his affiliates in South Carolina, servicing customers from a hangar in the Charleston Airport Facility. Defendants are allegedly affiliates, employees, agents, board members, and/or owners of Davis

Air, as well as the son and wife of Gary Davis. Both Defendants reside in Charleston, South Carolina.

Davis Air was formerly a member of Corporate Air, then-known as United Air Group, LLC. The initial members of that entity entered into an Operating Agreement on August 23, 1999 which was amended over the years. Among those amendments, Corporate Air and Davis Air entered into a Redemption and Settlement Agreement (the "Redemption Agreement") on August 6, 2010 in which Corporate Air purchased all of Davis Air's ownership interest in Corporate Air. The closing for the Redemption Agreement occurred on November 19, 2010.

Pursuant to the terms of the Redemption Agreement, Corporate Air agreed to pay Davis Air certain sums and to sublease from Davis Air the entire Charleston, South Carolina Airport for three years following the date of closing. Corporate Air also agreed to enter into Employment Agreements with Defendants as part of the Redemption Agreement for them to perform managerial, development, and sales services during the sublease.

The Employment Agreements include a provision by which Defendants agree to honor Section 4.1 of the Company's Operating Agreement. *See* ECF Nos. 1-2 & 1-3 (Employment Agreements of Defendants); ECF No. 9-1 (Operating Agreement of United Air Group LLC). Section 4.1 sets forth restrictive covenants regarding non-competition, non-solicitation, protection of confidential information and a right of first refusal to Corporate Air for new opportunities within the aviation field. Plaintiffs allege that Davis Air was competing with Corporate Air no later than March 6, 2012 in breach of Defendants' Employment Agreements by providing charter jet services. This lawsuit followed.

### B. Procedural History

Plaintiff initiated this action on May 24, 2013 by filing a one-count Complaint for breach of contract. Defendants filed a motion to dismiss on July 29, 2013, relying on Rule 12(b)(3) and Rule 12(b)(6). Defendants submit that dismissal for improper venue is appropriate under Rule 12(b)(3), arguing that a forum selection clause in the Employment Agreements mandates that the Court of Common Pleas of Allegheny County hear this case. Defendants also contend that dismissal is warranted pursuant to Rule 12(b)(6) because Plaintiff has agreed to arbitrate any dispute, the Complaint fails to establish any breach, and the Employment Agreement precludes the relief sought. For the reasons that follow, the Court will deny the motions to dismiss the Complaint

## II. Standard of Review

### A. Rule 12(b)(3)

A Rule 12(b)(3) motion seeks dismissal due to improper venue. The Supreme Court of the United States very recently provided guidance regarding the interplay between this rule, forum selection clauses, and the federal venue statutes. *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 12-929, 2013 WL 6231157 (U.S. Dec. 3, 2013) (slip opinion).

In *Atlantic Marine Construction Company*, a unanimous Court rejected the contention that a party may enforce a forum-selection clause by seeking dismissal of the suit under 28 U.S.C. § 1406(a) and Rule 12(b)(3).[1] *Id.* at *6. As the Court stated, "§ 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper'" which "depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue

---

1. The Supreme Court explicitly declined to address whether "a defendant in a breach of contract action should be able to obtain dismissal under Rule 12(b)(6) if the plaintiffs files suit in a district other than the one specified in a valid forum selection clause." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 12-929, 2013 WL 6231157, at *10 (U.S. Dec. 3, 2013)

laws, and those provisions say nothing about a forum-selection clause." *Id.* A district court must instead determine whether the case falls within one of the three categories set forth in § 1391(b) when venue is challenged. *Id.* To be sure, "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Id.*

The Supreme Court's ruling does not, however, leave a party without redress to enforce a valid forum selection clause. *Id.* at *9 . When it points to a particular federal district, the clause may be enforced through a motion to transfer under § 1404(a). *Id.* at *9. "For the remaining set of cases calling for a nonfederal forum, § 1404(a) has no application, but the residual doctrine of *forum non conveniens* has continuing application in federal courts." *Id.* at *10 (citation omitted). Accordingly, "because both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Id.* at *11 (citation omitted).

**B. Rule 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) Upon review of a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). But as the Supreme Court of the United States has made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the

speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of

the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III. Discussion

Defendants move for dismissal pursuant to Rule 12(b)(3) for improper venue and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Court will discuss those Rule 12 aspects seriatim.

### A. Rule 12(b)(3)

Plaintiffs have filed a Rule 12(b)(3) motion to enforce the forum selection provision in the Employment Agreements that "calls for a state forum." As drafted, the Employment Agreements both state as follows: "This Agreement shall be interpreted under the laws of the Commonwealth of Pennsylvania without giving effect to its conflicts of laws provisions and *may be enforced* in the State Courts of Allegheny County, Pennsylvania and the parties shall have all rights and remedies provided under Pennsylvania law, including without limitation, the Wage Payment and Collection Act." ECF Nos. 1-2; 1-3 at ¶ 8 (emphasis added).[2]

The Court agrees that this paragraph is a forum selection clause, but a Rule 12(b)(3) motion to dismiss is not the appropriate mechanism to enforce such a provision. *See Atlantic Marine Construction Company*, 2013 WL 6231157, at *6 ("Petitioner's contrary view improperly conflates the special statutory term 'venue' and the word 'forum.'"). Where, as here, a litigant seeks to enforce a forum-selection clause pointing to a state forum, it must invoke the residual doctrine of *forum non conveniens*.[3] Defendants have not done so here. Accordingly, the

---

2. The focus of the parties' dispute is over whether the highlighted language renders the clause mandatory or permissive. *See generally TaiDoc Tech. Corp. v. Diagnostics Devices, Inc.*, CIV.A. 12-2457, 2012 WL 3627423, at *3 (E.D. Pa. Aug. 23, 2012) ("Forum selection clauses are either mandatory or permissive. A mandatory forum selection clause clearly dictates that venue is proper only in the agreed upon forum. A permissive one does not limit the fora, but merely authorizes venue in a particular forum."). The Court need not decide this question at this juncture, but notes that it has serious doubts regarding the mandatory nature of the provision. *C.f. Synthes, Inc. v. Knapp*, CIV.A. 13-3285, 2013 WL 5594706, at *6 (E.D. Pa. Oct. 11, 2013).
3. This Court has no authority to transfer the case to a non-federal forum under 28 U.S.C. § 1404(a). No party has sought transfer to another federal court, such as the United States District Court for the District of South Carolina.

7

court will deny its motion to dismiss for improper venue to the extent that Defendants seek to enforce the forum selection clause.

As the Supreme Court instructed, Rule 12(b)(3) authorizes dismissal only when venue is "improper"—an inquiry governed by 28 U.S.C. § 1391. *See Atlantic Marine Construction Company*, 2013 WL 6231157, at \*\*6-7. Section 1391(b) provides that "A civil action may be brought in –

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

"A case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)." If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *See Atl. Marine Const. Co., Inc.*, 2013 WL 6231157, at \*6. Defendants bear the burden to make this showing. *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 160 (3d Cir. 2012) (citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1982)).

The statute makes clear that the events or omissions supporting a claim in a given jurisdiction must be "substantial." *See Bockman v. First Am. Mktg.*, 459 Fed. App'x 157, 161-62 (3d Cir. 2012) (collecting cases). "The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).

Moreover, "[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough." *Id.* at 294.

To determine "whether a substantial part of the events or omissions giving rise to a contract claim occurred in the district, courts consider: where the contract was negotiated or executed; where it was performed; and where breach occurred." *Bro-Tech Corp. v. Purity Water Co. of San Antonio, Inc.*, CIV. A. 08-371, 2008 WL 1757922, at *2 (E.D. Pa. Apr. 16, 2008) (citing 14D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3806.1 (3d ed. 2004)). There can be, however, "'more than one district in which a substantial part of the events giving rise to the claim occurred.'" *Id*.

Defendants tack on a venue challenge in their brief, although they use it only to bolster their interpretation of the forum selection clause as mandatory. *See* ECF No. 10 ("If Corporate Air is intending to rely on the Agreements as providing proper venue where it does not otherwise exist under 28 U.S.C. § 1391, then it must accept the terms of the Agreements which specify that the agreed venue is in the "State Courts" in Allegheny Count, not the federal district court."). Defendants also disagree with Plaintiff's assertion in the Complaint that venue properly lies in this District under subsection (b)(2) because the Employment Agreements were executed in the Western District of Pennsylvania.[4] Instead, they contend that the events giving rise to the claim here occurred almost exclusively in South Carolina. But Defendants did not move for dismissal on that basis. Plaintiff do not address venue pursuant to § 1391, ostensibly for that reason.

Rather than ordering supplemental briefing on this issue to perhaps quell any concerns that the Court may have regarding venue, the parties will be afforded the opportunity to properly

---

4. The Court notes that, by all accounts, the only applicable venue provision is subsection (b). Section (b)(1) does not apply because both Defendants reside in South Carolina. The catch-all provision of § (b)(3) is likewise inapplicable because Plaintiff (a Pennsylvania resident) arguably could have brought suit against Defendants in the United States District Court for the District of South Carolina.

9

raise the issue should they so desire. Accordingly, the Court will deny the Rule 12(b)(3) motion without prejudice in light of this new Supreme Court precedent and in fairness to the parties.

**B. Rule 12(b)(6)**

Defendants assert three independent bases for dismissal: that the Employment Agreements incorporate the arbitration provision of the Operating Agreement; that the breach of contract claim has not been properly pled; and that the remedies sought are not available to Plaintiff.

1. Arbitrability

Defendants' argument rests on the theory that the incorporation of Section 4.1 of the Operating Agreement by reference in the Employment Agreements constitutes a wholesale adoption of other provisions, including the binding arbitration provision at Section 11.1. *See* ECF No. 1-2 at 3 ("During the Term, Employee shall honor Section 4.1 of the Company's Operating Agreement."). Section 11.1 provides that "[t]he Company [then-United Air Group, LLC] and the Members agree that it is in their respective interest to utilize Common Law arbitration . . . in the event that there is a dispute under this Agreement." (ECF No. 9-1 at 30). From their perspective, this provision apparently binds Defendants even though they were not parties to the Agreement. The authority upon which Defendants rely to support their position is misplaced.

First, Defendants rely on *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513 (3d Cir. 2009) for their claim that the "Court of Appeals for the Third Circuit has held that where an agreement incorporates by reference another agreement containing an arbitration provision, then disputes that arise under the incorporating agreement become subject to arbitration." (ECF

No. 10). Although Defendants are somewhat correct in their description of that broad legal principle, the facts of *Certain Underwriters at Lloyd's, London* are easily distinguishable from the case at hand. *See, e.g.*, *id.* at 555 ("The retrocessional agreements' general incorporation clause, the second of two clauses containing incorporation language, makes clear that the clauses incorporated 'all' of the reinsurance treaties' terms and provisions so as to 'appl[y]' them to the retrocessional agreements. By employing two incorporation provisions, including one that 'applied' 'all terms and provisions of the [indicated reinsurance treaty],' the parties bound themselves by the arbitration agreement."). The Employment Agreements in this case make a single reference to the Operating Agreement—*i.e.* Section 4.1—in which the arbitration provision is found. There is no reference to arbitration in the Employment Agreement. There is no citation to any Section of the Operating Agreement other than 4.1 in the Employment Agreement. And there certainly is no general incorporation clause that could evidence an agreement to be bound. Thus, the Court is not persuaded by its first position.

Second, they cite *Dodds v. Pulte Home Corp.*, 909 A.2d 348, 351 (Pa. Super. Ct. 2006) to shore up their blanket statement that "arbitration agreements are enforceable by non-signing parties where those non-signing parties wish to arbitrate and the opposing party is bound to arbitrate under the arbitration provision." (ECF No. 10 at 9). The Court reads that case as standing for a different proposition: "[t]he parties to an agreement cannot attempt to defeat an arbitration clause simply by adding fraud allegations to what is essentially a contract claim or by adding a principal as a defendant who was not a party to the agreement." *Dodds*, 909 A.2d at 350. Accordingly, the motion to dismiss the Complaint based on a purported agreement to arbitrate this dispute will be denied.

2. Breach of Contract

Section 4.1 of the Operating Agreement requires that, upon request of the Company, a Member "will execute an appropriate Non-Competition Agreement including but not limited to the Member's promise that it will not . . . participate in a business which competes directly or indirectly with the Company." Paragraph 6 of the Employment Agreements provides that Defendants "shall honor Section 4.1 of the Company's Operating Agreement." (ECF No. 1-2 at 3).

Defendants submit that Section 4.1 only requires that they "'execute an appropriate Non-Competition Agreement' when requested to do so by Corporate Air" and that there is no breach given the absence of a separate non-compete agreement. (ECF No. 10 at 10). *See id.* ("Given that the Defendants' obligations under Section 4.1 is confined to execution of an appropriate non-completion [*sic*] agreement upon request, the fact that the Complaint contains no allegations whatsoever that the Defendants were ever requested to sign such an agreement or that they refused to execute one when requested to do so is fatal to [Plaintiff's] effort to state a claim for breaches of the Agreements.").

Plaintiff submits that the Court must consider the intent of the parties as well as the context in which the Employment Agreements were formed. Moreover, Plaintiff highlights that Defendants are members of Davis Air which is a former member of the Company and an original party to the Operating Agreement; and that the Employment Agreements were negotiated as party of the buy-out of Davis Air, Inc.'s interest in the Company.

This issue could turn on a question of fact. Given the pleading stage of this case, and the undeveloped record upon which this motion has been brought, the Court finds it would be

premature to rule on whether there has been a breach of the contract. Thus, the motion to dismiss will be denied on this basis.

3. Remedies

Defendants' final attempt at dismissal is more accurately characterized as an attack on the ad damnum clause of the Complaint.

In the Complaint, Plaintiffs ask for injunctive relief, declaratory relief, an accounting, and for interest, costs and other relief and seeks "compensatory damages, including reimbursement for all salary and employee benefits paid to [Defendant(s)] by Corporate Air from the date of the breach." *See* ECF No. 1 at ¶¶ 39(c)-(d).

Defendants submit that those damages are barred by the Employment Agreement. Paragraph 7 states "[w]hether or not Employee complies with his obligations under the Agreement, the [Plaintiff's] remedies are limited to recovery of damages and the Company shall have no right to terminate this Agreement or discontinue the salary and/or benefits." Relying on that provision, Defendants argue that because the Agreements expressly limit remedies to damages, the other relief sought is barred. Defendants likewise contend that their salary and benefits are not recoverable because the Agreement mandates their receipt irrespective of whether they comply with their contractual obligations. The only damages demand that Defendants do not contest are for those "profits from the charter jet services which were received . . . in violation of the Employment Agreements." (ECF No. 1 at 10, ¶ 39(f)).

As the Employment Agreement makes clear, Plaintiff has "no right to . . . discontinue the salary and/or benefits" of an employee "[w]hether or not [the] Employee complies with his obligations under the Agreement." Whether reimbursement of those amounts paid to Defendants as employees is another matter. Much like the breach of contract issue, a determination of this

13

matter may turn on the facts of this case.  Of course, there will be no damages if the Court rules or the factfinder finds that there has been no breach.  To the extent that Plaintiff seeks relief other than money damages—i.e., the injunctive relief—the Court will grant Defendants' request.  The Court otherwise denies the motion to dismiss.

### IV. Conclusion

For the reasons hereinabove stated, the Court will deny the motion to dismiss for improper venue and grant in part and deny in part the motion to dismiss for failure to state a claim upon which relief can be granted.

An appropriate Order follows.

McVerry, J.

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CORPORATE AIR, LLC, | ) |
| Plaintiff, | ) ) ) 2:13-cv-729 |
| v. | ) ) |
| JONATHAN BROOKS DAVIS *and* JACQUELINE DAVIS, | ) ) ) |
| Defendant. | ) ) |

## ORDER OF COURT

AND NOW, this 30th day December of 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION TO DISMISS (ECF No. 9) pursuant to Rule 12 is **GRANTED IN PART AND DENIED IN PART**. Defendants shall file a responsive pleading or motion consistent with this Memorandum Opinion on or before January 13, 2014.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **David A. Strassburger**
Email: dstrassburger@smgglaw.com
**Joseph R. Lawrence**
Email: jlawrence@smgglaw.com
**Kimberly S. Tague**
Email: ktague@smgglaw.com

**James R. Walker**
Email: james.walker@bipc.com